57 N.J. Super. 377 (1959)
154 A.2d 840
ROBERT EUGENE TULLY, APPELLANT,
v.
JOHN W. TRAMBURG, COMMISSIONER OF INSTITUTIONS AND AGENCIES, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1959.
Decided October 15, 1959.
*378 Before Judges GOLDMANN, FREUND and HANEMAN.
*379 Mr. O. Stanley Woolson, Jr., argued the cause for appellant (Mr. W. Eddy Heath and Mr. O. Stanley Woolson, Jr., assigned counsel for appellant).
Mr. Eugene T. Urbaniak argued the cause for respondent (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by HANEMAN, J.A.D.
Appellant, Eugene Tully, protests the action of the Commissioner of Institutions of the State of New Jersey in transferring him from Greystone Park State Hospital to State Prison and in refusing his request for retransfer.
Tully was convicted of the crime of assault with intent to rape. Pursuant to N.J.S. 2A:164-3 et seq., he was examined at the State Diagnostic Center at Menlo Park on January 23, 1957. On recommendation of the Commissioner of Institutions, and pursuant to N.J.S. 2A:164-6, subd. b, appellant was committed to Greystone Park Hospital on February 21, 1957, where he was given a psychiatric examination which resulted in a diagnosis of "Sociopathic Personality Disturbance, Dissocial Reaction." The following information was elicited from Tully during this examination: He was 22 years of age; the offense for which he was convicted involved a 16 year old girl; he admitted that he over-indulges in alcoholic beverages and has a pre-occupation with movies and stories that depict crimes and violence; he served in the Marines for four years and saw combat duty in Korea; he got "a big thrill" out of killing enemy soldiers; he described various homosexual activities; while in the fifth grade at school he set a girl's hair on fire by flipping a match on her head; he had very strong and sometimes uncontrollable sadistic impulses which have been acted out not only in the present offense but in previous sexual attempts as well. It was concluded that Tully represented a threat to his community and to himself.
*380 While the original investigation report suggested that appellant's problem was predominantly psychiatric, this theory was later abandoned. When, consistent with the requirement of N.J.S. 2A:164-8, he received first consideration on July 16, 1957 by a review board for possible release on parole, it was reported that "No psychotic material has been detected. * * *" In his request to the Commissioner of Institutions on June 2, 1958 to transfer appellant to the State Prison, Dr. W.H. Longley, Clinical Director of Greystone Park Hospital, stated: "There is no psychosis present in this patient and he knows exactly what he is doing. * * * Request is made for his transfer to a penal institution as not amenable to rehabilitation by psychiatric means."
The following facts concerning Tully's behavior while a patient at the hospital are significant: He associated with the discontents of the ward in an attempt to create dissatisfaction; he gave the attendants back talk and refused to comply with hospital regulations; he had intercourse a few times with his fiancee on the hospital grounds; he tried to sabotage the laundry by having the special cases manning it slow down in their work and stay off-duty for sick call, with only flimsy excuses; he tried to organize a sit-down strike among the laundry workers; at times he has broken up group therapy sessions by shouting abuse at the doctor.
Tully was found to be brimming with hostility. He admitted that if he had a weapon he would have killed the girls who accused him and he would have shot up the courtroom when he was arraigned. Dr. Longley reported that: "We feel he is antisocial rather than insane and certainly not suitably motivated for therapy." The doctor continued by stating that Tully exploited the system that was trying to help him, and frustrated the hospital's main function of restoration and social rehabilitation for a great number of its patients by his example of urging misbehavior. The time was ripe, urged the doctor, "to rescue the hospital and its community function from his marasmic influence." *381 Dr. Longley's request was investigated by Dr. A. Lovell Bixby, Director of Correction and Parole. The Commissioner of Institutions then reached the following conclusions:
"(a) Appellant has complete disregard for the rules, regulations and established program for patient treatment at the Greystone Park State Hospital;
(b) Appellant intentionally has attempted to incite misbehavior on the part of other patients at the hospital and has urged them to disregard program and regulations;
(c) By so doing, appellant has effectively hampered the course of treatment for other patients at said hospital, all of which is detrimental to the recovery of said patients;
(d) Appellant has demonstrated that he has no interest in his own rehabilitation by and through the medium of the program at said hospital and has so disrupted the program at Greystone Park State Hospital that he must be removed therefrom and transferred to State Prison where means are available to restrain his movements; and
(e) For the welfare of other patients at Greystone Park State Hospital, appellant cannot be retransferred to that institution or to any other hospital type institution." (Emphasis supplied.)
Transfer of appellant was made on June 11, 1958.
A request for retransfer to Greystone Park State Hospital was made by appellant on January 7, 1959. The Commissioner of Institutions asked for additional information from the clinical director of the hospital, which was furnished by letter of January 10, 1959 setting forth a fact situation consistent with that described above. The request for retransfer was denied on January 12, 1959. The Commissioner stated that all of the information presented to him was sufficient, in his discretion, to require appellant's transfer to an institution of greater security "for his own welfare and that of the many other patients at the Greystone Park State Hospital whose progress and recovery he was impeding by his persistent efforts to disrupt the institutional program." (Emphasis supplied.) At that time the Commissioner asserted that appellant would have an opportunity for psychiatric group therapy and psychological counseling at State Prison.
*382 Appeal was taken to this court to review the propriety of the Commissioner's decision.

I.
Appellant contends that the Commissioner's decision to transfer him to State Prison, as well as his subsequent denial of appellant's request for retransfer were erroneous and should be reversed. It is alleged that the Commissioner's decisions were not based upon adequate considerations pursuant to the standards set by N.J.S. 2A:164-7, which reads as follows:
"The commissioner of the department of institutions and agencies, upon commitment of such person, shall thereupon arrange for his treatment in 1 of the institutions under the jurisdiction of the department which, in the judgment of the commissioner, is best suited to care for the needs of such person. The commissioner, in his discretion, is hereby authorized * * * to arrange for transfer of such person to or from any institution within the jurisdiction of the department for the purpose of providing for the needs and requirements of such person according to the individual circumstances of the case."
Appellant argues that the reason for the transfer lay in the Commissioner's interest in the welfare of Greystone and its inmates rather than in appellant's welfare, which is not a legitimate consideration under the statute. He contends that it is his needs and requirements which must be subserved and not the needs and requirements of other patients or the public.
The State Prison is one of the institutions "within the jurisdiction of the department." State v. Newton, 17 N.J. 271 (1955). The statutory transfer power vested in the Commissioner is highly discretionary, and courts will not ordinarily interfere with its exercise. This power is not unlimited, however, and if a defendant who has been committed to a hospital for treatment under the terms of the Sex Offender Act makes an affirmative showing that his transfer to State Prison was arbitrary and in conflict *383 with the purposes underlying his sentence, he may obtain judicial relief. State v. Wingler, 25 N.J. 161 (1957). Undoubtedly, the Commissioner's broad transfer authority should be exercised with extreme caution. Nevertheless, there may well be compelling situations where the Commissioner has little or no practical alternative but to transfer a sex offender from a hospital to State Prison where he will receive the available psychiatric and medical attention suitable "to the individual circumstances of the case." State v. Wingler, supra.
Greystone Park State Hospital is an institution for the treatment of persons suffering from mental disorders. Present overcrowding at the institution approximates 1,000 patients. No special facilities have been provided for the treatment of sex offenders, and other mental patients without criminal records are thereby obliged to mingle with them. In the light of the numerous facts set out above, we cannot conclude that the Commissioner abused his discretion in this instance. To the contrary, he had no alternative. This is certainly not to say that the Commissioner has unlimited discretion, which would amount to an unconstitutional delegation of legislative power. The Commissioner is confined by the wording of N.J.S. 2A:164-7, which limits his transfer discretion to the institution which, in his judgment, "is best suited to care for the needs of such person * * * according to the individual circumstances of the case." The conclusions of the Commissioner set out supra, i.e., that appellant had complete disregard for the rules of Greystone Park State Hospital; that he incited misbehavior on the part of other patients; that he thereby hampered the operation of the hospital; and, particularly, that he had absolutely no interest in his own rehabilitation by and through the program of the hospital, clearly demonstrate that Greystone Park State Hospital was not the institution "best suited to care for [his] needs * * * according to the individual circumstances of [this] case." In other words, appellant required treatment in an institution where greater discipline *384 could be imposed so as to effectuate a change in his attitude towards the rehabilitation process.
In his decision refusing to retransfer appellant, the Commissioner specifically stated that which was implicit in his previous conclusions. He wrote:
"All of this information was sufficient, in my discretion, to require [appellant's] transfer to an institution of greater security for his own welfare and that of the many other patients at the Greystone Park State Hospital whose progress and recovery he was impeding by his persistent efforts to disrupt the institutional program." (Emphasis supplied.)
Appellant's recalcitrant conduct frustrated all efforts of the hospital to help him. It is therefore rather difficult to conceive that the hospital was the institution best suited to care for his needs. As Dr. Longley stated in his request for appellant's transfer, "Request is made for his transfer to a penal institution as not amenable to rehabilitation by psychiatric means." An examination of the entire record demonstrates that the decisions of the Commissioner of Institutions were based on good and valid reasons and that he correctly exercised his discretion in ordering the transfer of appellant to State Prison and in refusing retransfer.

II.
Appellant next contends that the Commissioner's actions in this case were unlawful because his findings of fact were made arbitrarily and were not the result of a proper investigation.
Arbitrary or capricious action on the part of an administrative official is impermissible, and upon an affirmative showing of such conduct, judicial relief will be accorded. State v. Wingler, supra. However, there has been no affirmative demonstration of arbitrary or capricious action in this case. An examination of the record of proceedings discloses that the Commissioner acted upon information supplied by Dr. W.H. Longley, Clinical Director of the Greystone Park Hospital. Dr. F. Lovell Bixby, Director of Correction and *385 Parole in the Department of Institutions and Agencies, who had immediate supervision of the collection of material relating to such transfers, spoke with Dr. Longley and elicited from him detailed information. The facts thus obtained were consistent with those contained in a subsequent communication of Dr. Longley's, dated January 10, 1959, in response to a request for additional information in connection with the Commissioner's consideration of appellant's request for a retransfer. Appellant has not demonstrated in what respects this investigation was not proper. Although Tully was not afforded an opportunity prior to his transfer to deny charges against him, he cites no authorities stating that he had any such right. No such hearing is required under the statute, which confers wide discretion upon the Commissioner in relation to transfers. Nor was appellant entitled to a hearing before transfer. The transfer by the Commissioner was an exercise of an executive rather than a judicial function and there is no denial of due process where such transfer is accomplished without a prior hearing. The court said, In re Zienowicz, 12 N.J. Super. 563, 572 (Cty. Ct. 1951):
"The transfer ordered in this case, without notice and hearing, is not illegal, nor is the statute so authorizing it unconstitutional as a denial of due process. The phrase `due process of law' is intended to guarantee to a defendant a fair and impartial trial, and is not interpreted as extending in application to the method of incarceration determined by administrative officials or body, vested with that power by statute, in the execution of sentence, after a trial in due course which stands unchallenged for its legality. * * *
That such a transfer is an executive rather than a judicial function and, moreover, presumptively within the contemplation of the court imposing sentence, is further apparent when it is considered that statutes conferring the right of transfer on administrative officials, which are in effect at the time of imposition of sentence, are as much a part thereof as though specifically incorporated in the sentence and, thus, the possibility of administrative transfer is an incident impliedly annexed thereto."
See also State v. Newton, 30 N.J. Super. 382, 387 (App. Div. 1954), affirmed 17 N.J. 271 (1955).
*386 In addition, it is quite significant that appellant never made a request for such a hearing, nor has he ever denied, either in his brief or elsewhere, that he committed the various acts of misconduct charged against him.
Affirmed.