162 N.J. Super. 386 (1978)
392 A.2d 1248
STATE OF NEW JERSEY, PLAINTIFF,
v.
CURTIS HARVEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 25, 1978.
*387 Mr. Robert A. Shire, Deputy Attorney General, for the State.
Mr. Edward Kopelson, Public Defender, for defendant.
McKENZIE, J.S.C.
On April 1, 1977 defendant pled guilty to rape. He was diagnosed as a sex offender under N.J.S.A. 2A:164-1 et seq. and sentenced to the Adult and Diagnostic Treatment Center (A.D.T.C.) under a 30-year indeterminate sentence.
*388 Defendant was received at A.D.T.C. on April 5, 1977. On April 12, 1977 he committed a sodomy on another resident of the Center. He was thereafter transferred from the sex offender unit to the general prison population of the New Jersey State Prison at Rahway.
On appeal, the matter was remanded to this court for a hearing under State v. Horne, 56 N.J. 372 (1970), and to review the interinstitutional transfer of defendant.
After a plenary hearing in which the State was represented by the Office of the Prosecutor of Union County, the court determined that defendant's objection to his classification as a sex offender, not raised at the time of sentencing, was not well founded. The court also ruled that the transfer of defendant from A.D.T.C. was made arbitrarily and without legal authority. Accordingly, this court ordered defendant to be returned to A.D.T.C. Since the Commissioner of the Department of Corrections (Commissioner) was not directly represented at the hearing, the court granted leave to the Commissioner to apply to the court for reconsideration. Such application having been made, the court has heard and considered the evidence adduced by the Commissioner bearing on the transfer of the defendant out of the sex offender unit.
The facts, insofar as is necessary to determine the issues before the court, are not substantially in dispute. The court is satisfied from the evidence that defendant is a violent individual who, within a few days after admission to A.D.T.C., committed an act of sodomy on another resident. Whether a razor was employed by defendant is somewhat in dispute, although he did on one occasion admit to the authorities that he threatened the victim with the same in committing the act, and A.D.T.C. found that he did so. Racial tension within the institution resulted  defendant is black, his victim is white  and a polarization of the residents occurred. White residents reportedly threatened to form a vigilante committee to deal with defendant.
*389 A.D.T.C. does not presently have facilities to segregate residents on a long-term basis. The environment is therapeutic rather than punitive. The principal mode of treatment is group therapy. Under these circumstances it was determined by A.D.T.C. that they did not have the appropriate modality to deal with defendant and meet his needs. Accordingly he was transferred to the New Jersey State Prison at Rahway as a member of the general prison population. No specific program or plan was established by the Commissioner to treat or otherwise deal with defendant thereafter. Simply put, because of his violent nature defendant did not fit in at A.D.T.C., and there is no plan or program to treat him so long as he remains violent.
The case presents both a paradox and an anomaly. Rape by its very nature is a violent crime and specifically "violent" is one of the criteria necessary to find a defendant a proper subject for treatment under the act. N.J.S.A. 2A:164-5. Paradoxically, A.D.T.C. is unable and not set up to deal with sex offenders who are too violent. Anomalously, one of the purposes of the Sex Offender Act being to afford treatment to a defendant which will protect the public from future assaultive behavior by him, the greater danger he poses to the safety of the public, the less chance there is he will obtain the treatment he needs.
N.J.S.A. 2A:164-7 is relied upon by the Commissioner for the transfer of this defendant and provides as follows:
The commissioner of the department of institutions and agencies, upon commitment of such person, shall thereupon arrange for his treatment in one of the institutions under the jurisdiction of the department which, in the judgment of the commissioner, is best suited to care for the needs of such person. The commissioner, in his discretion, is hereby authorized and empowered to arrange for the transfer of such person to or from any institution within the jurisdiction of the department for the purpose of providing for the needs and requirements of such person according to the individual circumstances of the case.
The purpose of the act has been construed by our courts to be "cure through treatment of the aberrations which caused *390 the sexually deviant offenses rather than punishment." State v. Clark, 65 N.J. 426, 430 (1974). See also, State v. Andrews, 105 N.J. Super. 62 (App. Div. 1969), remanded on other grounds 56 N.J. 372 (1970); State v. Mickschutz, 101 N.J. Super. 315 (App. Div. 1968).
Our courts have nevertheless recognized the necessity for allowing discretion to the Commissioner to transfer a sex offender to a correctional institution under his jurisdiction, where the circumstances do not permit meaningful treatment of a defendant under the act. See State v. Newton, 17 N.J. 271 (1955). Tully v. Tramberg, 57 N.J. Super. 377 (App. Div. 1959), upheld the exercise of discretion by the Commissioner in transferring a violent and disruptive defendant out of the facility to which he was sentenced and to a correctional institution.
The parameters establishing the area of discretion within which the Commissioner may proceed have been set forth thusly:
When defendants are lawfully committed under the statute, the Department must thereafter conscientiously seek to attain fulfillment of the legislative program. The administrative determinations as to custody and treatment must, of course, rest initially with the departmental officials and courts will generally not disturb their decisions. Nevertheless, there as elsewhere throughout our governmental administration arbitrary or capricious action is impermissible and upon a sufficient showing of such conduct judicial relief will justly be afforded. [State v. Wingler, 25 N.J. 161, 181 (1957)]
The discretion to transfer conferred upon the Commissioner by N.J.S.A. 2A:164-7 is for the express purpose of "providing for the needs and requirements of such person according to the individual circumstances of the case."
Here the only "need" of defendant met by the transfer was the protection of his person from some vague threats of retaliation by other residents. It is clear that such purpose was secondary at best. Primarily, A.D.T.C. had a defendant they could not deal with and who might disrupt their ability to treat other residents. The transfer of defendant to the *391 State Prison system was the solution. Nothing further was done for defendant, nor has any policy been established or implemented which would meet the need of defendant for the treatment which he clearly requires, and which A.D.T.C. recognized when he was classified as a sex offender by that institution. It is perhaps significant that this defendant had stated to the police when first arrested and to the authorities at A.D.T.C. that he was sick and needed help.[1]
The Commissioner may not however, as here, simply remove defendant from the institution where he was sentenced to receive treatment under the act and abdicate any further obligation under the act to meet the needs of the defendant.
The court questioned Dr. Mintz, the Superintendent of A.D.T.C., as to the procedures involved in a possible retransfer of defendant if he had in fact while at Rahway become amenable to treatment at A.D.T.C. His response is significant:
What would happen, if the Institution at Rahway endorsed the idea through the Classification Committee  that's only one psychologist's report,  and by the way, there's another report quite different from that one in the record that it describes Mr. Harvey as very impulsive and volatile and dangerous.
The Court:
That doesn't mean he's not a sex offender.
Dr. Mintz:
I'm saying that. I'm not saying he's not either. What would happen is the psychologist would refer to the Classification Committee *392 and the Committee through the Superintendent would write the recommendation to the Special Classification Committee and all of the records and all materials to date would be considered by the Committee,  that Special Classification Committee. If they endorse the idea, if there was enough evidence demonstrating self-control and he was no longer a danger, then they would recommend to be returned to A.D.T.C., but that has never occurred. [Emphasis supplied]
Clearly, a "violent" defendant receives no treatment at A.D.T.C., and once so classified and transferred from A.D.T.C. he apparently receives no further treatment under the program. This court is satisfied that such was not the intent of the Legislature.
The Commissioner has an affirmative duty to treat defendant. It is not conditioned on defendant's ability to fit into a particular modality. If the present operation at A.D.T.C. is unable to meet his needs, the Commissioner has a responsibility to formulate and implement a policy which will.
It is to be noted that as of April 1978 a psychologist at Rahway State Prison reported that defendant should be considered for further therapy, possibly at A.D.T.C. Defendant offered testimony[2] of another psychologist which it was represented would be to the effect that the defendant would now be responsive to the form of treatment provided at A.D.T.C.
Dr. Mintz was unaware of any present amenability to treatment on the part of defendant and explained that numerous procedures by the host institution (Rahway) would be required under present rules and regulations before defendant would be considered for retransfer to A.D.T.C.
Neither State v. Wingler nor Tully v. Tramburg, supra, require unconditional affirmance of the Commissioner's action *393 here. In each of those cases (Wingler at 172 and Tully, 57 N.J. Super. at 381) the court noted from the record a plan that defendant would receive some form of treatment available at the host institution.
Further, since the decisions in those cases our courts have been more insistent that persons committed involuntarily to our state institutions receive the treatment required. The lack of adequate facilities and staff, accepted as "hard fact" in State v. Newton, supra, 17 N.J. at 275-276, has more recently been considered as no longer justification for failure to provide the treatment required by persons committed to our institutions. In re D.D., 118 N.J. Super. 1, 6 (App. Div. 1971). See also State v. Carter, 64 N.J. 382 (1974); State v. Krol, 68 N.J. 236 (1975), and State In Interest of R.G.W., 145 N.J. Super. 167 (J. & D.R. Ct. 1976).
Nor can the failure to treat defendant be justified by distinguishing his condition because he has been sentenced for a criminal offense and not been adjudicated insane or mentally incompetent as in the cases cited above. In State v. Clark, supra our Supreme Court, emphasizing the treatment rather than punishment goal of the Sex Offender Act, set aside consecutive penal sentences imposed on a defendant found to be within the purview of the act, stating:
The scheme of our sex offender act, as previously indicated, is the specialized institutionalization of those sex deviants whose abnormal conduct has resulted in conviction for certain designated sexual crimes, is compulsive and repetitive, and either is accompanied by violence or is imposed upon a victim under 15 years of age. The inherent legislative finding underlying the act is that such persons are suffering from mental and physical illness involuntarily causing their conduct, for which criminal incarceration, whether thought of as punishment or as a deterrent, will accomplish nothing; the same conduct will be repeated after release. [65 N.J. at 434]
This court therefore holds that the Commissioner here has failed to perform his responsibility to defendant under the Sex Offender Act in transferring him to a penal *394 institution without any plan to furnish necessary treatment to him.
Accordingly, if the Commissioner determines not to retransfer defendant to A.D.T.C. at this time because for any reason his needs cannot be currently met there, then the Commissioner is ordered by this court to undertake such investigation and inquiry as are necessary to effect the placement and maintenance of defendant at an institution under his jurisdiction where implementation of defendant's right to treatment as required by N.J.S.A. 2A:164-7 will be achieved. If such a treatment program is not available, then the Commissioner is ordered to formulate such a treatment program specifically designed to meet the needs of defendant and implement same at whatever institution defendant is to be committed to.
The Commissioner shall report the details and results of such effort to this court within 45 days.
NOTES
[1] At A.D.T.C., when he pleaded for help after the sodomy, he was clearly told that help would be conditioned on his telling the truth. He then admitted putting a razor to the victim's throat. The next day his transfer was recommended.
[2] The court ruled that defendant's charge that A.D.T.C. was arbitrary in not admitting defendant at this time was not an issue before the court, and not ripe for determination. The lack of any policy or procedure to affirmatively ascertain and act on such information is however significant in the opinion of the court.