201 N.J. Super. 438 (1985)
493 A.2d 556
RAYMOND GERALD, PETITIONER-APPELLANT,
v.
COMMISSIONER, NEW JERSEY DEPARTMENT OF CORRECTIONS, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 23, 1985.
Decided May 16, 1985.
*443 Before Judges PRESSLER, BRODY and COHEN.
Joseph H. Rodriguez, Public Defender, for appellant (John M. Cannel, Assistant Public Defender, of counsel and on the brief; Leigh B. Bienen, Assistant Deputy Public Defender, on the brief).
Raymond Gerald filed a letter brief and supplemental letter brief pro se.
Irwin I. Kimmelman, Attorney General of New Jersey, for respondent (Jeffrey A. Bartolino, Deputy Attorney General, on the letter brief).
PER CURIAM.
This appeal requires us to reconsider the question of the parole eligibility of a defendant who was sentenced to an indeterminate term under the former New Jersey Sex Offender Act, N.J.S.A. 2A:164-3, et seq. (repealed in 1978 by N.J.S.A. 2C:98-2), and who was thereafter transferred from the Adult Diagnostic and Treatment Center (ADTC) to the general prison population. We disagree with the conclusion reached by State v. Smith, 190 N.J. Super. 21 (App.Div. 1982), and hold that the parole status of such a defendant must be the same as that of a sex offender sentenced under N.J.S.A. 2C:47-1, et seq.
The facts are essentially undisputed. In 1966 defendant Raymond Gerald pleaded guilty to an accusation charging him with sodomy and impairing the morals of a minor in violation of former N.J.S.A. 2A:143-2 and 2A:96-3, respectively. Pursuant to former N.J.S.A. 2A:164-3 he was committed to the Diagnostic Center, the predecessor of ADTC, for a physical and psychiatric evaluation, as a result of which the diagnostic unit found him eligible for treatment as a sex offender and recommended his commitment for specialized treatment. See former N.J.S.A. *444 2A:164-5 and 6(b). The trial judge sentenced defendant to an indeterminate term, subject to a 30-year maximum, at the diagnostic unit.
The Code became effective on September 1, 1979. In August 1980 defendant moved for resentencing pursuant to N.J.S.A. 2C:1-1(d)(2). The Resentencing Panel concluded that defendant had demonstrated the requisite disparity for relief but that he had failed to demonstrate good cause therefor. We affirmed the Panel's denial of relief, noting that defendant had not responded to therapeutic treatment. See State v. Gerald, A-636-80T4 (decided March 17, 1982).
In affirming the Resentencing Panel's denial of relief, the court was evidently unaware that during the pendency of his appeal from its decision, he was transferred by ADTC to Rahway State Prison. This transfer took place in October 1981, nearly 15 years after his original commitment. The reason for the transfer is explained in the November 1981 report of the Special Classification Review Board, which stated that it had been
* * * effected due to Mr. Gerald's long standing lack of participation in the therapeutic program. Despite repeated and varied attempts at motivating him Mr. Gerald just could not profit from being housed in the ADTC. He continues to be viewed as a threat to society and as such continued confinement is recommended.
Defendant has been evaluated by the Special Classification Review Board at 6-month intervals since his transfer. The last of these, dated June 15, 1984 and constituting the 32nd consideration of defendant's status, recommends continued confinement. It explains that
Mr. Gerald was transferred to SPR [State Prison of Rahway] on October 6, 1981 due to continued non-participation in therapy, as well as indications that he is comfortable in an institutional setting and does not want to make progress. Mr. Gerald continues to refuse to attend the SPR group, to be interviewed or to have his six month review. He remains bitter, angry and resentful.
Due to lack of attendance in group and refusal to be interviewed, no evaluation can be made and further retention must be necessarily recommended.
Defendant appeals from this report and recommendation claiming that as a result of his transfer from ADTC to Rahway *445 State Prison, the question of his continued confinement is properly within the direct jurisdiction of the Parole Board pursuant to N.J.S.A. 30:4-123.51(a) rather than the initial jurisdiction of the Special Classification Review Board pursuant to N.J.S.A. 30:4-123.51(e). We find substantial merit in this contention.
The scheme for disposition of compulsive and repetitive sex offenders provided for by the former Sex Offender Act was substantially altered by the Code, which added a punitive component to the original exclusively rehabilitative and treatment purposes of sentencing. State v. Chapman, 95 N.J. 582, 591-592 (1984). Under the former Act, the sentence was required to be indeterminate subject to a maximum term not exceeding the maximum sentence imposable for the crime. No minimum term, however, could be fixed, and the defendant was entitled to release as soon as the Special Classification Review Board concluded that he would be able to make "an acceptable social adjustment in the community." See former N.J.S.A. 2A:164-6 and 8. Nor were the treatment and rehabilitative purposes of the sex offender's sentence altered or affected by ADTC's inability to meet these objectives at the diagnostic facility. Thus, while a defendant could be transferred from the diagnostic facility to the general prison population pursuant to the Commissioner's discretionary power afforded by former N.J.S.A. 2A:164-7, ADTC was nevertheless obliged to provide him with treatment for his psychiatric problems in whatever institution he was transferred to. See State v. Harvey, 162 N.J. Super. 386 (Law Div. 1978), aff'd 170 N.J. Super. 391 (App.Div. 1979). And see State v. Wingler, 25 N.J. 161 (1957); State v. Newton, 17 N.J. 271 (1955); Tully v. Tramburg, 57 N.J. Super. 377 (App.Div. 1959). In short, a defendant sentenced as a sex offender remained confined as a sex offender and subject to the conditions of confinement as a sex offender during the entire period of his imprisonment irrespective of his actual amenability to treatment and the institution in which he was confined. One of these conditions was the continued exercise by the *446 Special Classification Review Board of its parole recommendation authority in accordance with a psychiatrically oriented release standard.
Chapter 47 of the Code rejected the premise of the original act that a defendant's sex offender status remains inalterable during the period of confinement. The scheme of the Code in respect of defendants sentenced to ADTC as sex offenders is to require that a fixed term consistent with the sentencing provisions of Chapters 43 and 44 of the Code be imposed rather than the former indeterminate sentence. N.J.S.A. 2C:47-3(b). And see State v. Chapman, 95 N.J. 582 (1984). As long as a sex offender sentenced under Chapter 47 remains confined at ADTC, his situation is substantially the same as a defendant sentenced under the former act except that his maximum period of confinement is determined by the actual fixed term imposed rather than the maximum allowable for the crime. And, unless a period of parole ineligibility has been imposed as part of the fixed term pursuant to N.J.S.A. 2C:14-6 or 2C:43-6(b), the defendant may be released from his ADTC confinement by the Parole Board only on a recommendation by the Special Classification Review Board that he is "capable of making an acceptable social adjustment in the community," the same standard prescribed by the original act. N.J.S.A. 2C:47-5; N.J.S.A. 30:4-123.51(e). See also State v. Chapman, supra.
The Code, however, unlike the former Act, recognizes that not every sex offender sentenced to ADTC can or will respond affirmatively to treatment. Whereas former N.J.S.A. 2A:164-7 required a sex offender to be accorded treatment in whichever institution in which he was confined, N.J.S.A. 2C:47-4(a) requires the provision of treatment only in ADTC. If ADTC treatment cannot be effectively rendered, then the rehabilitative purpose of sex offender sentencing is deemed to have failed. In that case, N.J.S.A. 2C:47-4(b) authorizes defendant's transfer out of ADTC to another institution. The express *447 consequence of this transfer is the termination of defendant's sex offender status for purposes of determining the conditions of his confinement and release. He is no longer required to be afforded treatment, the particular treatment expertise of the Special Classification Review Board becomes irrelevant, the primary purpose of the remaining sentence is punitive, and defendant's parole eligibility is governed by N.J.S.A. 30:4-123.51(a) in the same manner as if he had originally been sentenced to a regular prison facility for the fixed term originally imposed. See McCray v. Dietz, 517 F. Supp. 787 (D.N.J. 1980), in which Chief Judge Fisher so held on the ground that
The New Jersey statute, N.J.S.A. 2C:47-4(b), is not unclear or subject to a narrowing interpretation by the state court. That statute specifically states that
[t]he commissioner may, in his discretion, order the transfer of a person sentenced under this chapter out of the Adult Diagnostic and Treatment Center. In the event of such a transfer, the conditions of confinement and release of such person transferred shall no longer be governed by this chapter. (emphasis added)
It is apparent that this section intends to apply the usual parole guidelines (N.J.S.A. 30:4-123.51 et seq.) rather than ADTC guidelines (N.J.S.A. 2C:47-5) for inmates transferred out of ADTC. The statute is clear and, consequently, I will decide the due-process claim. [Id. at 790]
McCray involved the claim of a prisoner resentenced under Chapter 47 of the Code. As to such a transferee, there can be no question that the parole eligibility provisions of N.J.S.A. 30:4-123.51(a) apply, that the Special Classification Review Board plays no further role, and that release on parole is governed, as is the case with all fixed-term prisoners, by the public safety standard prescribed by N.J.S.A. 30:4-123.53 rather than by the treatment-success standard prescribed by N.J.S.A. 2C:47-5 and its predecessor provision, N.J.S.A. 2A:164-8, governing the decisional process of the Special Classification Review Board.
The question before us is a narrow one. Should all transferred sex offenders be similarly treated or must those sentenced prior to the adoption of the Code continue, after transfer, to be classified as sex offenders for treatment and *448 parole purposes? Our analysis of the original act, the relevant Code provisions and the Parole Act of 1979, N.J.S.A. 30:4-123.45 et seq., persuades us that considerations of fundamental fairness as well as the implementation of legislative intent dictate equal treatment for both classes of transferred sex offenders.
At the outset, we point out that none of the provisions of the original sex offender act survived the express repeal of N.J.S.A. 2C:98-2. Evidently the Legislature concluded that no survival was necessary since sex offenders committing sex offenses after the effective date of the Code would be subject to the provisions of Chapter 47. Nor was survival of the original act apparently deemed necessary in order to continue to deal with previously sentenced sex offenders because of the enactment as part of the Code of N.J.S.A. 2C:1-1(d)(1), which provides that
The provisions of the code governing the treatment and the release or discharge of prisoners, probationers and parolees shall apply to persons under sentence for offenses committed prior to the effective date of the code, except that the minimum or maximum period of their detention or supervision shall in no case be increased.
There is nothing in this clear and unambiguous statement which excepts sex offenders from its mandate. Moreover, the repeal of the former act in its entirety results, as a practical matter, in there being no treatment, release, or even transfer alternatives to the Code available for previously sentenced sex offenders. In this regard, we point out that where the Legislature intended to continue pre-Code release provisions for pre-Code defendants, it did so quite clearly. Thus, N.J.S.A. 2C:43-9 provides that parole shall be governed by the Parole Act of 1979, N.J.S.A. 30:4-123.45, et seq. By reason of N.J.S.A. 2C:1-1(d)(1), N.J.S.A. 2C:43-9 must be construed as applying to pre-Code defendants. Indeed, the 1979 Parole Act which the Code incorporates by reference expressly so applies by preserving the pre-Code parole scheme for first-offenders sentenced to life imprisonment or to minimum-maximum terms under Title 2A and by modifying the parole eligibility of pre-Code subsequent *449 offenders. See N.J.S.A. 30:4-123.51(j). The 1979 Parole Act makes no special mention, however, of pre-Code ADTC sentences. N.J.S.A. 30:4-123.51(e) merely refers to ADTC sentences, incorporating the substantive provisions of N.J.S.A. 2C:47-5, which are substantially the same as repealed N.J.S.A. 2A:164-8.
Nor do we perceive anything in the legislative policy underlying the variant approach of Chapter 47 to the treatment of sex offenders which would justify the withholding of its dispositional provisions from a transferred pre-Code defendant. The former act, as we have noted, was predicated, at least in part, on the theory that a compulsive and repetitive sex offender suffers from psychiatric aberration rather than criminal mens rea and, hence, should be treated rather than punished. See State v. Clark, 65 N.J. 426, 430 (1974). The original act, however, did not take into sufficient account the obvious truth that not all such psychiatric aberrations are successfully treatable. Thus, the insistence of the former act on the continuation of futile treatment until the maximum term had run and the continued classification of defendant as a sex offender after his transfer to a regular prison facility was, in the end, unrealistic, unproductive for the defendant, and wasteful of the regrettably limited treatment resources of the State.
As we read Chapter 47, it effects a sound and viable accommodation of the personal and community interests involved in the disposition of sex offenders. In short, if the defendant is truly amenable to rehabilitation by treatment, he is accorded that opportunity just as he was under the former act since, in respect of sex offenders serving their sentences in ADTC, there is no substantial difference between pre-Code and post-Code defendants in view of the virtual identity between the treatment and release provisions of the original act and Chapter 47. Compare N.J.S.A. 2A:164-7 with N.J.S.A. 2C:47-4(a) and N.J.S.A. 2A:164-8 with N.J.S.A. 2C:47-5. The Code, however, recognizes that treatment may not prove to be the dispositive *450 solution for every offender sentenced to ADTC. If, after a fair treatment attempt it is apparent that it is unlikely to succeed, ADTC is free to conclude that the sentencing predicate was wrong and that the defendant is unlikely, as a result of the treatment program, ever to make an acceptable social adjustment in the community. If that is so, the transfer of defendant out of ADTC effects the conversion of his status from that of a patient to that of an ordinary offender. That conversion, moreover, clearly serves the interests of both the defendant and society. It cannot, however, be effected without the fixed-term component of the Code ADTC sentence since, in order to be treated as an ordinary offender under the Code, the defendant must have a fixed term for, among other reasons, the application of the Parole Act, N.J.S.A. 30:4-123.51(a).
Thus there is no substantial difference between the pre-Code and the post-Code offender while serving a sentence at ADTC. Both are entitled to treatment and release in the discretion of the Special Classification Review Board.[1] We are persuaded that the Legislature did not intend to treat them differently after transfer out of ADTC. There seems little point in continuing to treat people for whom treatment has been determined to be of no avail or in continuing to entertain the myth that a sex offender who proves unresponsive to treatment efforts nevertheless remains in need only of psychiatric ministrations and must be afforded continued protection from the punitive consequences of his act. Nor do we see any basis upon which such a defendant, sentenced under the old act, has a right to demand a continuing offer of treatment or the continuation of futile treatment after transfer out of ADTC. *451 There is, moreover, no justification for leaving him in a permanent limbo.
Although we are persuaded that the Legislature did not intend to except transferred pre-Code sex offenders from N.J.S.A. 2C:1-1(d)(1) and therefore from N.J.S.A. 2C:47-4(b), we nevertheless recognize that a declaration of the applicability of N.J.S.A. 2C:47-4(b) cannot be self-executing since those defendants do not have the fixed-term requisite for application of N.J.S.A. 30:4-123.51(a). This omission may suggest a legislative intention to have retained the disparate treatment between pre-Code and post-Code sex offenders transferred out of ADTC. On the other hand, we are nevertheless persuaded that the complex of repealed and enacted sections heretofore considered points, in the light of their legislative purpose, to the opposite conclusion. We therefore believe, in the face of this ambiguity, that it is more likely than not that the Legislature did not intend disparate treatment between these two classes of transferred sex offenders.
In order to accomplish what we have concluded the legislative intention to have been, it is clear that a pre-Code sex offender transferred from ADTC must have his original sentence modified by substitution of a fixed term for the originally imposed indeterminate term. We are satisfied that this can be best accomplished pursuant to N.J.S.A. 2C:1-1(d)(2). In our view, in this very limited and extraordinary situation, the elements of disparity and good cause required by that provision of the Code are always present. As a matter of procedure, we conclude that when the Commissioner exercises his discretion to effect such a transfer, he should either himself make the necessary motion for resentencing or assure that defendant himself does so as a pre-condition of the transfer.
We recognize that this court reached a contrary conclusion in State v. Smith, supra, 190 N.J. at 21. That decision relied heavily on a formal opinion of the Attorney General, F.O. No. 5 (1981), with which we disagree. The crux of that opinion is the *452 view that sex offenders sentenced to ADTC under the original Act remain subject to the release provisions of N.J.S.A. 2A:164-8. The opinion did not, however, consider the effect of the repeal by the Code of that section along with the rest of the former Sex Offender Act, including, of course, the transfer provision of N.J.S.A. 2A:164-7. It is that repeal, in light of N.J.S.A. 2C:1-1(d)(1) and the purposes and provisions of Chapter 47, which causes us to disagree with the Attorney General and consequently with the holding in Smith. We are also aware that to some extent our holding here might be construable as expressing disagreement with Savad v. Corrections Dep't, 178 N.J. Super. 386 (App.Div. 1981) certif. den. 87 N.J. 389 (1981). We point out only that none of the defendants in Savad had been transferred out of ADTC, and we need not therefore now address disparity problems which arise during service of the ADTC sentence.
We make one final observation. Even if we were satisfied that defendant would not be entitled to application of N.J.S.A. 2C:47-4(b), we would nevertheless conclude that on the basis of N.J.S.A. 2C:1-1(d)(2), considered independently, he would be entitled to resentencing to a fixed term. For the reasons we have heretofore expressed, this defendant has shown good cause for the termination of attempted psychiatric treatment and, hence, for resentencing as an ordinary offender rather than as a patient. There is no real purpose we can perceive justifying continued involvement in his status of the Special Classification Review Board applying a psychiatric standard for his release. The question in his case, as in the case of every offender eligible for parole, should be whether or not his release will pose a danger to the community. See N.J.S.A. 30:4-123.53.
The determination of the Special Classification Review Board of its continuing jurisdiction over defendant is reversed. We remand to the trial court for resentencing consistent with this opinion.
NOTES
[1] The exception to the identity of treatment of pre-Code and post-Code offenders while confined at ADTC is in susceptibility of Code sex offenders sentenced to ADTC to imposition of a mandatory parole ineligibility period. See State v. Chapman, supra. See also Savad v. Corrections Dep't, 178 N.J. Super. 386 (App.Div. 1981) certif. den. 87 N.J. 389 (1981), holding that pre-Code sex offenders serving sentences at ADTC are not entitled to the work and good behavior credits provided for by N.J.S.A. 30:4-92 and 30:4-140.