224 N.J. Super. 263 (1988)
540 A.2d 218
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RONALD BOWEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 22, 1988.
Decided April 4, 1988.
*265 Before Judges BAIME and ASHBEY.
Alfred A. Slocum, Public Defender, attorney for appellant (Leigh B. Bienen, Assistant Deputy Public Defender, of counsel and on the brief).
Larry J. McClure, Bergen County Prosecutor, attorney for respondent (Susan W. Sciacca, Assistant Prosecutor, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, filed a brief amicus curiae (Debra L. Stone, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
On May 28, 1986, our Supreme Court rendered its decision in Gerald v. Commissioner, N.J. Dept. of Corr., 102 N.J. 435 (1986), holding that defendants serving Title 2A indeterminate terms under the new repealed Sex Offender Act (N.J.S.A. 2A:164-3 et seq.) who are transferred into the general prison population are entitled to be resentenced under the Code of Criminal Justice (N.J.S.A. 2C:1-1 et seq.). Defendant, a confirmed pedophile with an extensive criminal history, appeals from his resentencing. He contends that the custodial terms *266 imposed ran afoul of the double jeopardy and ex post facto prohibitions and deprived him of due process. We disagree and affirm.
The salient facts are not in dispute. On April 27, 1963, defendant, who had already been twice convicted in New York for sexual offenses against children, was entrusted with the care of a six year-old boy, whom he was to take to the Palisades Amusement Park. Instead, defendant accompanied the child to Bowen's house where he sodomized him. Defendant entered a plea of guilty to the crime of sodomy, a high misdemeanor under N.J.S.A. 2A:143-2, and was sentenced under the Sex Offender Act to an indeterminate term subject to the statutory maximum of 30 years.
Defendant subsequently escaped from custody, but was recaptured and returned to the treatment unit at Rahway some three years later. Although he was paroled on March 27, 1973, defendant was arrested in New York and was extradited back to New Jersey as a parole violator. Defendant resumed his custodial sentence and was ultimately reparoled on July 20, 1976.
Following his release, defendant obtained employment at a day care center. In June 1977, defendant met and befriended an eight year-old boy whose family resided in an apartment above the day care center. Defendant managed to attract that child and another ten year-old boy to his apartment where, according to the evidence presented at his subsequent trial, he forced or persuaded them to engage in various sexual acts. During the ensuing months, defendant committed fellatio on the two children and they on him. For these acts, defendant was tried and convicted on two counts of impairing the morals of a minor, in violation of N.J.S.A. 2A:96-3. Again, defendant was found to fall under the purview of the Sex Offender Act. He was thus sentenced to consecutive indeterminate terms, subject to the aggregate maximum of six years. In addition, the trial court ordered that these sentences be served consecutively *267 with the term remaining on the parole violation for the prior sodomy conviction.
From February 6, 1981 until May 5, 1981, defendant was consistently offered treatment at the Adult Diagnostic and Treatment Center (ADTC). However, defendant obdurately refused to participate in the treatment and rehabilitative program. Based upon defendant's lack of amenability to treatment, the Commissioner of the Department of Corrections ordered his transfer to the general prison population at the Rahway facility. Defendant's subsequent motions for resentencing pursuant to N.J.S.A. 2C:1-1c(2) and N.J.S.A. 2C:1-1d(2) were denied. We later affirmed defendant's convictions and the orders denying resentencing in an unpublished opinion, and the Supreme Court denied certification.
Following the Court's decision in Gerald v. Commissioner, N.J. Dept. of Corr., supra, defendant again applied for resentencing. Since the Commissioner had refused to return defendant to the ADTC, the Resentencing Panel determined that the threshold requirements for reconsideration of sentence were satisfied. After protracted hearings, the Panel decided that (1) the congruent Code offense for impairing the morals of a minor was attempted aggravated sexual assault[1] (N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2a), (2) the equivalent Code offense for sodomy was aggravated sexual assault (N.J.S.A. 2C:14-2a), (3) the aggravating factors substantially outweighed the mitigating circumstances and (4) public security mandated imposition of lengthy sentences. On the aggravated sexual assault offense, defendant was sentenced to a custodial term of 20 years. Two consecutive eight year sentences were imposed on the attempted aggravated sexual assault crimes. Thus, the aggregate *268 sentence imposed was 36 years, the same as had previously been set on the pre-Code offenses. Although defendant urged that this restructuring of the sentences violated the ex post facto and double jeopardy provisions contained in the federal Constitution, these questions were not addressed by the Panel.

I.
Our inquiry commences with a brief review of the evolution of our laws dealing with the treatment and punishment of sex offenders. The problems raised by the sex offender are perhaps symptomatic of the broader issues presented in the custody and treatment of all criminal offenders. The philosophical basis for "punishment" has divided scholars for centuries. At varying times, emphasis has been placed on (1) retribution, (2) deterrence of others, (3) rehabilitation of the offender and (4) protection of the public by isolation of the defendant. See State v. Ivan, 33 N.J. 197, 199 (1960). While no single aim or thesis can claim scientific verity or universal support, sex offenses involving force or age disparity, because of their particularly abhorrent nature, have generated the most insistent public demands for the institutionalization and treatment of abnormal offenders until they may safely be released. State v. Wingler, 25 N.J. 161, 169-170 (1957).
Predicated upon this demand, our Legislature enacted the Sex Offender Act in 1950. See L. 1950, c. 207. The statutory scheme was designed to provide treatment to those whose aberrant conduct was characterized by (a) a pattern of repetitive-compulsive behavior, and (b) violence or (c) an age disparity between the offender and the victim. N.J.S.A. 2A:164-5. We stress the rehabilitative purpose of the former Act. Under its provisions, the sentence was required to be indeterminate subject to a maximum term not exceeding the maximum sentence imposable for the crime. No minimum term, however, could be fixed, and the defendant was entitled to release as soon as the Special Classification Review Board concluded that he would be *269 able to make "an acceptable social adjustment in the community." See N.J.S.A. 2A:164-6 and -8.
It was recognized that not all offenders could be treated in a single program and thus the Commissioner was empowered to order a transfer to any institution within his jurisdiction for the "purpose of providing for the needs and requirements" of the violator "according to the individual circumstances of the case." N.J.S.A. 2A:164-7. Despite pointed editorial criticisms, see 9 Rutgers L.Rev. 567 (1955), and the adoption of several amendments, the Legislature did not move to narrow the sweep of the transfer powers of the Commissioner. See State v. Wingler, supra, 25 N.J. at 171-172; State v. Newton, 17 N.J. 271, 273 (1955). However, while a defendant could be transferred from the diagnostic facility to the general prison population, the Commissioner was nevertheless obliged to provide him or her with treatment for any psychiatric problems in whatever institution to which he or she was transferred. See State v. Harvey, 162 N.J. Super. 386 (Law Div. 1978), aff'd 170 N.J. Super. 391 (App.Div. 1979).
Although the Code retained many of the provisions contained in the original Sex Offender Act, its emphasis shifted to structured determinate sentencing and, at least to some extent, punishment and "just deserts" for the offense committed. Under the Code, the trial court must set a fixed term consistent with the sentencing provisions of Chapters 43 and 44. See State v. Chapman, 95 N.J. 582, 591-592 (1984). The Code thus recognizes that "sex offenders, in addition to being treated for psychological problems, should be punished for their wrongful acts." Id. at 592.
Consistent with this thesis, the Code, unlike the former Act, recognizes that not every sex offender sentenced for treatment can or will respond affirmatively to rehabilitative efforts. While N.J.S.A. 2A:164-7 required a sex offender to be accorded treatment even after his transfer to the general prison population, N.J.S.A. 2C:47-4a rejects this premise. Following *270 his transfer, the prisoner's parole eligibility is governed by N.J.S.A. 30:4-123.51a in the same manner as if he had originally been sentenced to a regular facility for the fixed term originally imposed. See McCray v. Dietz, 517 F. Supp. 787, 790 (D.N.J. 1980). Succinctly stated, the Code does not retain the former Act's insistence on the continuation of futile treatment until the maximum term expires. If treatment fails, the Commissioner is free to conclude that the sentencing predicate was wrong and the prisoner may be transferred to the general prison population. If so, the transfer converts the inmate's status from that of a patient to that of an ordinary offender.
This conversion of the prisoner's status was recognized in Gerald v. Commissioner, N.J. Dept. of Corr., supra. There, the Court determined that an inmate, originally sentenced under the Sex Offender Act, who is released from treatment and transferred to the general prison population, is subject to the same parole and release provisions as an offender sentenced under the Code's Chapter 47 who is similarly transferred because of lack of amenability to rehabilitation. Id. 102 N.J. at 437. The Court further held, as we did in our prior opinion in that case (102 N.J. Super. 438), that:
[n]o rehabilitative treatment is provided under the Code for a sex offender who has been transferred from the ADTC to the state prison. Consequently, such an inmate cannot be compelled to serve his original sentence if that constitute[d] ... an indeterminate term subject to the maximum term for the particular offense under Title 2A. [102 N.J. at 437].
* * * * * * * *
The judgment of the Appellate Division contemplates that so long as he remains in the status of a sex offender transferred from the ADTC to the state prison, respondent will be resentenced in accordance with the substantive standards of the Code applicable to such offenders. This is deemed necessary to effectuate the legislature's intent and to achieve parity between pre-Code and post-Code sex offenders.... The sentence now to be imposed should reflect the changes in sentencing policy under the Code of Criminal Justice.... The sentencing judge is authorized to consider punitive aspects of the sentence, the sentencing term, parole ineligibility, and the overall restructuring of the sentence, including any consecutive feature. [102 N.J. at 437-438; citations omitted].

*271 II.
Before we turn to defendant's constitutional arguments, we digress to address an issue that has not been raised, except perhaps tangentially, by either party. More specifically, we consider whether the Resentencing Panel's decision to increase defendant's original sentences imposed on the convictions for impairing the morals of a minor contravenes the provisions of either N.J.S.A. 2C:1-1d(1) or (2). The former section provides:
The provisions of the [C]ode governing the treatment and the release or discharge of prisoners, probationers and parolees shall apply to persons under sentence for offenses committed prior to the effective date of the [C]ode, except that the minimum or maximum period of their detention or supervision shall in no case be increased. [Emphasis added].
The latter section states:
Any person who is under sentence of imprisonment on the effective date of the [C]ode for an offense committed prior to the effective date which has been eliminated by the [C]ode or who has been sentenced to a maximum term of imprisonment for an offense committed prior to the effective date which exceeds the maximum established by the [C]ode for such an offense and who, on said effective date, has not had his sentence suspended or been paroled or discharged, may move to have his sentence reviewed by the sentencing court and the court may impose a new sentence, for good cause shown as though the person had been convicted under the [C]ode, except that no period of detention or supervision shall be increased as a result of such sentencing. [Emphasis added].
First, it is obvious that the provisions of N.J.S.A. 2C:1-1d(2) are not applicable. Under pre-Code law, consensual fellatio was not the subject of any specific statutory prohibition. The offense was generally prosecuted under the lewdness or indecency statute, N.J.S.A. 2A:115-1, or where, as here, minors were involved, under the impairing the morals of a minor statute, N.J.S.A. 2A:96-3. In enacting the Code, our Legislature consolidated various sexual offenses involving penetration. N.J.S.A. 2C:14-1c. Included in the definition of "sexual penetration" is the act of fellatio. Ibid. As we pointed out previously, ante n. 1, defendant does not contest the determination of the Resentencing Panel that attempted aggravated sexual assault is the congruent Code offense for the pre-Code convictions. The offense is a second degree crime and has a *272 sentencing range of between five and ten years. Hence, N.J.S.A. 2C:1-1d(2) is not applicable because the sentences imposed originally for the impairing the morals of a minor offenses were not greater than that permitted under the Code.
Second, although more troublesome, we are equally convinced that N.J.S.A. 2C:1-1d(1) did not preclude resentencing the defendant to greater terms on the offenses of impairing the morals of a minor than those originally imposed, where, as here, such action did not have the net effect of enhancing the quantum of the maximum set initially by the trial court. While our research does not disclose any reported New Jersey decision on the subject, we are satisfied that the statutory prohibition set forth in N.J.S.A. 2C:1-1d(1) is not violated under the extraordinary circumstances present here, so long as the aggregate term of imprisonment is not increased.
This conclusion comports with the articulated objective of our Supreme Court in Gerald v. Commissioner, N.J. Dept. of Corr., supra, which was to create parity between all prisoners transferred from the diagnostic unit without reference to whether they were originally sentenced under the Sex Offender Act or the Code's Chapter 47. Clearly, it would be anomalous if defendant were to receive a lenient punishment not reflecting the true penal consequences of his criminal conduct. It would indeed be incongruous to accord defendant a benefit by virtue of his obstinate refusal to be treated for his psychological malady. The penal result would be fortuitous and wholly unrelated to the present emphasis, so apparent in the Code, on insuring that the offender is punished for his wrongful act. We thus hold that N.J.S.A. 2C:1-1d(1) does not prevent a court from resentencing a defendant to a term greater than that which was originally imposable as long as the aggregate period of incarceration is not increased.

III.
We now turn to defendant's constitutional arguments. We first consider his claim that the Resentencing Panel violated *273 the double jeopardy prohibition by increasing his sentences on the convictions for impairing the morals of a minor.[2] We disagree with this contention.
No one currently disputes the great worth of the constitutional safeguard against double jeopardy. The prohibition is of ancient origin and was one of the principal limitations upon arbitrary power confirmed by the Magna Carta of 1215. See State v. Labato, 7 N.J. 137, 143 (1951). It justly assures that the State "with its great resources will not be permitted to harass and oppress the individual by multiple prosecution or punishment for the same offense." State v. Currie, 41 N.J. 531, 536 (1964). See also Green v. United States, 355 U.S. 184, 187-188, 78 S.Ct. 221, 223-224, 2 L.Ed.2d 199, 204 (1957).
The Double Jeopardy Clause has its roots in the common law pleas of autrefois acquit, autrefois convict and pardon. United States v. Scott, 437 U.S. 82, 87, 98 S.Ct. 2187, 2191, 57 L.Ed.2d 65, 71 (1978), reh'g den. 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 197 (1978). In this vein, the United States Supreme Court has identified "three separate constitutional protections" afforded by the guarantee against double jeopardy:
It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. [North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-665 (1969). See also State v. Barnes, 84 N.J. 362, 370 (1980)].
The Court has consistently treated acquittals on the facts of the case differently from sentencing for double jeopardy purposes. See United States v. DiFrancesco, 449 U.S. 117, 127-131, 101 S.Ct. 426, 433, 66 L.Ed.2d 328, 339-341 (1980). Beginning *274 with Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) and Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904), it has unequivocally held that double jeopardy precludes a second trial following acquittal on the facts. Perhaps it can be said that this is the most fundamental aspect of the rule, for it is applied even where "the acquittal was based upon an egregiously erroneous foundation." Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629, 631 (1962).
Although the parameters of the prohibition, as applied by the Court, are far less clear in other contexts, see, e.g., Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); Swisher v. Brady, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978); United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), the central thesis that has evolved over the years is that successive prosecutions are not generally to be permitted. "[S]ociety's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws." United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554 27 L.Ed.2d 543, 553 (1971).
The point to be made here is that "historically, the pronouncement of sentence has never carried the finality that attaches to an acquittal." United States v. DiFrancesco, supra, 449 U.S. at 133, 101 S.Ct. at 435, 66 L.Ed.2d at 343. As the Court recently observed in upholding the Government's right to appeal a sentence on the basis of undue leniency, its "decisions in *275 the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal." Id., 449 U.S. at 134, 101 S.Ct. at 435, 66 L.Ed.2d at 344. Stated another way, "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Id., 449 U.S. at 137, 101 S.Ct. at 437, 66 L.Ed.2d at 346. The Clause "does not require that a sentence be given a degree of finality that prevents its later increase." Ibid. See also State v. Giorgianni, 189 N.J. Super. 220, 225-230 (App. Div. 1983), certif. den. 94 N.J. 569 (1983); State v. Jones, 188 N.J. Super. 201, 206 (App.Div. 1983); State v. Farr, 183 N.J. Super. 463, 470 (App.Div. 1982).
In State v. Ryan, 86 N.J. 1 (1981), cert. den. 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981), our Supreme Court carefully considered and distinguished its holding from United States v. DiFrancesco, supra, when it addressed the question whether the double jeopardy protection against multiple punishment precludes a court from increasing a defendant's sentence once he has served part of it. There, the defendant, after serving approximately six months of his maximum five year sentence, was granted a modification and was transferred to a drug treatment program as a condition of probation. When the defendant violated probation, he received a term longer than his original sentence. The Court reversed, holding that double jeopardy considerations militated against increasing the defendant's prison sentence when he had already served a portion of it. Id. at 8-10.
As observed in a subsequent decision, State v. Rodriguez, 97 N.J. 263 (1984), "Ryan can be understood to hold that the commencement of sentence coupled with the defendant's expectation of finality in his original underlying conviction and sentence combine to raise a constitutional bar against an increase in that sentence." Id. at 270. We recognize that, at least to some extent, these ingredients are present here. While a cogent argument can be made that whatever expectation of *276 finality defendant harbored regarding his original sentences for the offenses of impairing the morals of a minor was dissipated when he moved for resentencing pursuant to N.J.S.A. 2C:1-1d(1) and (2), this would in no sense resolve the question relating to the resentencing of persons transferred from the diagnostic unit under Gerald v. Commissioner, N.J.Dept. of Corr., supra. In other words, whether or not requested by the prisoner, he must, under the mandate of Gerald, be resentenced under the Code. We thus choose to rest our holding on a different basis.
The answer cannot be found in Latin verbs and legalisms. Rather, "[i]n applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technisms." State v. Currie, supra, 41 N.J. at 539. Particularly in the context of the unusual problem present here, "[t]he primary considerations should be fairness and fulfillment of reasonable expectations in ... light of the constitutional and common law goals" we indentified previously. Ibid.
So viewed, we are convinced that defendant's resentencing did not impinge upon any of the policies or goals embedded in the double jeopardy proscription. A converse holding would create an insuperable obstacle to attainment of the objective of parity sought to be achieved by our Supreme Court in its decision in Gerald, this despite no semblance of the oppressive practices at which the double jeopardy provision is aimed. We perceive no constitutional doctrine mandating such a result.
Rather, we are of the view that constitutional and other policy concerns are not compromised where interdependent sentences are restructured to satisfy the mandate of Gerald, so long as the aggregate term of imprisonment is not increased. Cf. State v. Rodriguez, supra, 97 N.J. at 274-277; State v. Truglia, 97 N.J. 513, 524-525 (1984). See also United States v. Woodward, 726 F.2d 1320, 1328 (9 Cir.1983), rev'd in part 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985); United States v. Moore, 710 F.2d 270, 271 (6 Cir.1983), cert. den. 464 U.S. 997, *277 104 S.Ct. 497, 78 L.Ed.2d 690 (1983); McClain v. United States, 676 F.2d 915, 917 (2 Cir.1982), cert. den. 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); United States v. Henry, 680 F.2d 403, 411 (5 Cir.1982), vacated 709 F.2d 298 (5 Cir.1983); United States v. Busic, 639 F.2d 940, 947-948 (3 Cir.1981), cert. den. 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). Although in this case the original sentences were imposed at different times, the Resentencing Panel was bound under Gerald to apply the Code's sentencing policies to persons transferred from the ADTC. To this extent, the resentencing involved the restructuring of interdependent sentences. Because of changes in the laws, the original sentences failed of their essential purpose. See State v. Culver, 23 N.J. 495, 504 (1957), cert. den. 354 U.S. 925, 77 S.Ct. 1387, 1 L.Ed.2d 1441 (1957); State v. Johnson, 176 N.J. Super. 1, 7 (App.Div. 1980), aff'd 88 N.J. 26 (1981); State v. McCourt, 131 N.J. Super. 283, 288 (App.Div. 1974); State v. Sheppard, 125 N.J. Super. 332, 336 (App.Div. 1973), certif. den. 64 N.J. 318 (1973); State v. Fisher, 115 N.J. Super. 373, 379 (App.Div. 1971); State v. Strupp, 101 N.J. Super. 94, 98 (App.Div. 1968); but see State v. Heisler, 192 N.J. Super. 586, 592 (App.Div. 1984). Distinguishable on this basis are such decisions as State v. Matlack, 49 N.J. 491 (1967), cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967) and State v. Pratts, 145 N.J. Super. 79 (App.Div. 1975), aff'd o.b. 71 N.J. 399 (1976).
In sum, we perceive nothing in the double jeopardy principle or in the policies upon which the prohibition rests barring the Resentencing Panel under the circumstances present here from increasing one or more of the sentences originally imposed as long as the aggregate period of incarceration is not thereby increased.

IV.
We find equally unpersuasive defendant's assertion that his resentencing violated the ex post facto proscriptions set *278 forth in the federal and state constitutions. The prohibition against ex post facto laws "is designed to secure substantial personal rights against arbitrary and oppressive legislation...." State v. Davis, 175 N.J. Super. 130, 147 (App.Div. 1980), certif. den. 85 N.J. 136 (1980). The drafters of the federal Constitution "sought to assure that individuals had fair warning of the impact of legislation and could rely on its meaning." State v. T.P.M., 189 N.J. Super. 360, 366 (App.Div. 1983). See also Weaver v. Graham, 450 U.S. 24, 28-29, 101 S.Ct. 960, 963-964, 67 L.Ed.2d 17, 22-23 (1981); Dobbert v. Florida, 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344, 356 (1977), reh'g den. 434 U.S. 882, 98 S.Ct. 246, 54 L.Ed.2d 166 (1977); Beazell v. Ohio, 269 U.S. 167, 169-170, 46 S.Ct. 68, 68, 70 L.Ed. 216, 217-218 (1925). The clause thus "prohibits any law which in relation to the past offense or its punitive consequences, alters the situation of the offender to his detriment." State v. T.P.M., supra, 189 N.J. Super. at 366-367. See also State v. Humanick, 199 N.J. Super. 283, 303 (App.Div. 1985), certif. den. 101 N.J. 266 (1985); State v. Chapman, 187 N.J. Super. 474, 478 (App.Div. 1982).
Against this backdrop, we agree with defendant that ordinarily it would be constitutionally offensive to apply the Code's sentencing provisions to a pre-Code offense, where that course would expose the offender to an increased term. Here, however, we view defendant's resentencing as an integrated whole and we again stress that the aggregate sentence imposed was in no sense increased. So posited, it cannot fairly be said that the Code was applied retrospectively in an arbitrary or vindictive manner. The simple and overriding fact is that the sentence imposed by the Resentencing Panel was not more severe than the punishment assigned by law when the criminal acts occurred. See Weaver v. Graham, supra, 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24. We thus discern no violation of the ex post facto proscription.

*279 V.
We hold that the Resentencing Panel did not violate any constitutional doctrine by restructuring defendant's sentences in accordance with Gerald's directive, since no greater period of imprisonment was imposed. Upon our view that neither due process nor the double jeopardy nor ex post facto prohibitions were offended, it is unnecessary for us to determine what impact a contrary decision would have on those who were convicted and sentenced under the Sex Offender Act, but who were subsequently transferred to the general prison population. We nevertheless add the following brief comments.
In directing that sex offenders transferred from the ADTC to state prison must be resentenced in accordance with the substantive standards of the Code, the Court stated that it deemed this course "necessary to effectuate the legislature's intent and to achieve parity between pre-Code and post-Code sex offenders." Gerald v. Commissioner, N.J. Dept. of Corr., supra, 102 N.J. at 437-438. If, as defendant contends, this course is to be thwarted by application of constitutional principles, and we maintain that it need not be, the result would be one of disparate treatment between these two classes of transferred sex offenders. Indeed, pre-Code offenders would be treated in far more lenient fashion than would their post-Code counterparts. Worst yet, the result would be to reward those prisoners whose obstinate refusal to cooperate with rehabilitative efforts has caused them to be transferred from the ADTC. The end result would be to require the earlier release of those most likely to commit abhorrent crimes.
Clearly, the Legislature could not have intended such an anomalous result. If the Code created an infirmity by permitting the Commissioner to transfer pre-Code sex offenders out of the ADTC without according them treatment, thus creating the need for resentencing, the answer might well be that such transfers without prescribing a program of rehabilitation were never intended by our Legislature. In other words, we suggest *280 that the problem might best be resolved by applying pre-Code law to pre-Code offenders, thus assuring such transferees treatment and thereby obviating the need for resentencing.
We do not advocate such a course. Rather, we merely note that the Gerald opinion is predicated upon the belief that pre-Code sex offenders who are transferred out of the ADTC can feasibly be sentenced in accordance with the Code's provisions. If constitutional doctrines proscribe this course, it is by no means clear that the most dangerous must benefit at the expense of their next victims.
Affirmed.
NOTES
[1] At the resentencing hearing, the State took the position that the evidence presented at trial on the impairing the morals of a minor charges disclosed completed acts of aggravated sexual assault. The Resentencing Panel rejected this contention and adopted the view of the defense that the congruent offense was attempted aggravated sexual assault. No cross-appeal has been filed.
[2] We need not treat separately the question of the applicability of our state constitutional prohibition against double jeopardy. Our Supreme Court has consistently applied double jeopardy principles which accord with the federal Constitution. Despite language differences, the federal and state constitutional double jeopardy protections are coextensive. See State v. Rechtschaffer, 70 N.J. 395, 404 (1976); State v. Farmer, 48 N.J. 145, 168 (1966), cert.den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967).