264 N.J. Super. 318 (1993)
624 A.2d 981
NO ILLEGAL POINTS, CITIZENS FOR DRIVERS RIGHTS, INC., JAMES HENNING, ARLENE MEHLMAN, DOROTHY HAINES, ROBERT DAVIS, JR., ANTHONY HESSE, ROBERT HEFTY, ROBERT RYERSON, MARK DE FRINO AND BERNARD LAUFGAS, PLAINTIFFS-APPELLANTS,
v.
JIM FLORIO, GOVERNOR, SKIP LEE, DIRECTOR OF DIVISION OF MOTOR VEHICLES, SAMUEL FORTUNATO, COMMISSIONER OF INSURANCE, NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, MARKET TRANSITIONAL FACILITY, ROBERT J. DEL TUFO, ATTORNEY GENERAL AND THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 1993.
Decided April 20, 1993.
*320 Before Judges PETRELLA, D'ANNUNZIO and KEEFE.
*321 Charles M. Izzo, attorney for appellant.
Robert J. Del Tufo, Attorney General, attorney for respondents Jim Florio, et al. (Joseph L. Yannotti, Assistant Attorney General, of counsel and John P. Bender, Deputy Attorney General and Valerie L. Egar, Deputy Attorney General, on the brief).
Francis & Berry, attorneys for respondent New Jersey Automobile Full Insurance Underwriting Association (Hugh P. Francis, of counsel and Peter A. Olsen, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The issue presented by this appeal is whether the Division of Motor Vehicles (hereinafter D.M.V.) exceeds its statutory authority when it assesses points to a New Jersey licensed driver for motor vehicle violations occurring within the State of New Jersey. The matter arises out of a suit brought by a public interest group, No Illegal Points, Citizens for Drivers' Rights, Inc., a non-profit New Jersey Corporation, and nine individual drivers, in which they contend that only courts are permitted to assess points for motor vehicle violations occurring within the State pursuant to N.J.S.A. 39:5-30.6.[1] For the reasons stated herein, we conclude that the D.M.V. has not exceeded its statutory authority.
The action was originally instituted in the Chancery Division, by a complaint which demanded judgment:
a) Restraining all defendants from compiling information pertaining to driver's license points without direct verification of such penalties having been assessed by a Judge in open court.
b) Restraining all defendants from processing, implementing or maintaining any administrative suspensions of a New Jersey drivers license without direct verification of the assessment of the requisite point penalties by a Judge in an open Court in the State of New Jersey.

*322 c) Ordering the defendants to refund all surcharges, fees, premiums and costs which were assessed to the persons represented by the plaintiffs without verification of the existence of points having been assessed to such persons by a Judge in Open Court since January 1, 1983.
d) Awarding damages to the plaintiffs in an amount sufficient to compensate them for injury suffered as a result of misconduct and malfeasance on the part of the defendants along with reasonable attorney's fees and costs of this suit.
The Chancery Division judge denied plaintiffs' request for a preliminary injunction, but required the D.M.V. to show cause why it should not be enjoined from suspending driving privileges for accumulated points based on in-state convictions where points were assessed by the D.M.V. instead of in open court.
At the subsequent hearing on the Order to Show Cause, the judge determined that plaintiffs' suit was a challenge to an action of a state administrative agency, and transferred the matter to the Appellate Division pursuant to R. 1:13-4 and R. 2:2-3(a)(2). Plaintiffs do not challenge that transfer. Because the challenge presented by plaintiffs is to a long-standing practice of the D.M.V., rather than any particular decision of the Director, we question whether the transfer was appropriate. However, since the parties have not shown any need to develop a more complete record,[2] and the issue presented is a question of statutory interpretation in light of the record presented, we shall address the substantive issues.

I.
Plaintiffs first contend that N.J.S.A. 39:5-30.6, enacted in 1982, expressly removed the function of assessing points for in-state Title 39 convictions from the D.M.V., and vested sole responsibility for such action in the municipal courts. The statutory provision upon which plaintiffs rely provides:
The court shall assess points at the time of conviction for any offense committed in this State, and the Director of the Division of Motor Vehicles in the Department of Law and Public Safety shall, upon receiving notice, assess points for any conviction *323 occurring in another jurisdiction. The court shall transmit a record of all points assessed, along with the record of conviction to the director. The director shall maintain records of all points assessed in a manner which he shall prescribe. In addition to any requirements the director may prescribe, the record shall include the respective dates of commission and conviction of the offense or offenses.
Read literally, the statutory language supports plaintiffs' argument. However, defendants respond that the legislative history relevant to the 1982 amendments supports the D.M.V.'s interpretation and long-standing practice both prior to and since 1982, wherein points are assessed by the D.M.V.
In construing a statute, the goal of the court is to ascertain the intent of the Legislature with reasonable certainty. Division of Motor Vehicles v. Kleinert, 198 N.J. Super. 363, 369, 486 A.2d 1324 (App.Div. 1985). The source of legislative intent is not limited to the language of the statute. In addition to the wording of the statute, the policy behind it and the legislative scheme of which it is a part, as well as the legislative history and concepts of reasonableness, are essential aids in determining legislative intent. Paramus Substantive Certification No. 47 (Fanwood Bill), 249 N.J. Super. 1, 591 A.2d 1345 (App.Div. 1991); Coletti v. Un. Co., C. Freeholders, 217 N.J. Super. 31, 524 A.2d 1270 (App.Div. 1987). Courts will enforce legislative intent even when it conflicts with the language of the statute. Longworth v. Van Houten, 223 N.J. Super. 174, 192-93, 538 A.2d 414 (App.Div. 1988). See also N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972) (holding that "[w]here a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter."); and Henry v. Shopper's World, 200 N.J. Super. 14, 18, 490 A.2d 320 (App.Div. 1985) (holding that "[a] statute must be interpreted sensibly, rather than literally, with the purpose and reason for the legislation being controlling.")
The New Jersey point system has been administered by the D.M.V. since its inception. In Allen v. Strelecki, 50 N.J. 410, 412-14, 236 A.2d 129 (1967), the Supreme Court described the way in which the point system operated at that time.

*324 Some years ago the Director of the Division of Motor Vehicles adopted a "Point System Regulation" under which "points" are assessed against a licensed driver upon violation of various sections of the statutes governing operation of motor vehicles. The number of points imposed varies depending upon the type of infraction.
The relevant portions of the D.M.V.'s regulation in force at that time said:
The New Jersey point system is a driver corrective measure designed to discipline traffic law violation repeaters. It operates exclusively from the central office of the Division of Motor Vehicles, in Trenton. The driver records which form the basis for action against repeaters are traffic law convictions in the magistrates' courts which the law requires the courts to report to the division. Traffic law convictions of New Jersey drivers in other States and Canadian Provinces likewise become a part of the operator's record.
A driver amassing 12 or more points within a three year period dating from the latest violation, becomes subject to a hearing before the Director, in Trenton, on a rule to show cause why his driving privilege should not be revoked. [Id. at 413, 236 A.2d 129.]
Thus the D.M.V. had exclusive control over the point system. Upon the forwarding of a report of conviction by the court, the scheduled points were assessed against the driver automatically by the D.M.V. Id. at 414, 236 A.2d 129.
The first statutory reference to the point system was in L. 1969, c. 261 (N.J.S.A. 39:5-30.2, 3). At that time, the Legislature recognized the "point system" already in existence and created the "Driver Improvement School". N.J.S.A. 39:5-30.2 gave the Director of the D.M.V. discretion to permit a driver to attend the Driver Improvement School rather than suspend that driver's license. N.J.S.A. 39:5-30.3 codified the already existing practice of the D.M.V., in which a driver who had accumulated more than twelve points within a three year period would be required to show cause before the Director why the driver's license should not be suspended. See Allen v. Strelecki, supra.
In 1974, a Motor Vehicle Study Commission (hereinafter the Commission) was created to review and evaluate the D.M.V.'s procedures in the areas of licensing and driver improvement, and to make recommendations for changing the existing D.M.V. driver safety programs. The Commission made numerous recommendations regarding all phases of D.M.V. operations, many of which *325 were later enacted by statute. The Commission also made several recommendations regarding the point system, the majority of which were subsequently incorporated into the D.M.V.'s regulations. As noted by the Commission,
[a] point system was never intended to be a method of automatically suspending a license. Rather, it was designed as an objective method of identifying drivers who have developed problems in their driving and who need assistance. It has been suggested that official programs can be more effective in improving traffic safety only by improving driver performance instead of simply removing from the road those drivers with bad records.
........
The utility of a point system as a highway safety measure depends primarily on the assumption that the driver improvement action taken does, in fact, improve driving performance and thus reduce or eliminate the risk of future driver failure. If beneficial effects of driver improvement action derived from the point systems cannot be demonstrated, point systems are of no utility as driver surveillance and improvement techniques.
........
A point system founded on highway safety considerations, should be coupled to a driver remediation program that is more than an automatic alternative to suspension. The points program and accompanying improvement techniques should emphasize positive methods of improving driving behavior at an early state in a driver's career, minimization of the number of suspensions, and should be tailored to individual needs to the extent compatible with cost effectiveness.
[Report of the New Jersey Motor Vehicle Study Commission, p. 117-120].
In response to the Commission's recommendations, and pursuant to his authority under N.J.S.A. 39:5-30 and 39:5-30.3, the Director of the D.M.V. adopted new regulations in 1977 which included the following:
1. The point schedule recommended by the Commission. See N.J.A.C. 13:19-10.1.
2. Provision for discretionary license suspension of persons who accumulated twelve or more points regardless of the time period over which the points were accumulated. Provision allowing the Director to permit a person to attend a driver improvement school in lieu of all or part of any suspension. N.J.A.C. 13:19-10.2.
3. Provision that if a person failed to comply with all the requirements of the school, his driving privileges shall be suspended. N.J.A.C. 13:19-10.3.
4. Provision for an advisory notice to a person who accumulated between six and eleven points. N.J.A.C. 13:19-10.4.
5. Provision for an annual point reduction credit. N.J.A.C. 13:19-10.5.
6. Provision that if, within one year following suspension, official warning or completion of a driver improvement program, a person committed any subsequent *326 violation of the motor vehicle laws, his driving privileges would be suspended for a period designated in the regulation. N.J.A.C. 13:19-10.6.
In 1977, the Legislature made several statutory amendments to Title 39. See L. 1977, c. 27. The amendments were designed to reflect the above administrative changes in the "point system," and to change the name of the Motor Vehicle Driver Improvement School to Motor Vehicle Driver Improvement Program. See N.J.S.A. 39:5-30.2 to 39:5-30.4.[3] These administrative and statutory changes concerning the point system gave legal effect to the Commission's recommendation that the primary purpose of the point system was to provide remedial help for problem drivers, not to penalize them.
In 1982, the Legislature again made statutory amendments to Title 39, Chapter 5. It is as a result of those amendments that this matter is currently before this court. As originally introduced on February 1, 1982, Senate Bill No. 897 would have changed the point system from one that was created and administered by the D.M.V. to one that was created by the Legislature and administered by the courts pursuant to a statutory point schedule included in the bill. The relevant portion of the original sponsor's statement read as follows:
This bill would establish a statutory point system for driver education and control. The present point system is set out by regulation. The statutory section establishing authority for the present point system is repealed.
There are a few fundamental differences between the system envisioned by this bill and the present point system. First, points assessed for violations occurring within this State would be given by the court at the time of conviction. Only points for offenses occurring out of state would be assessed by the division under this bill. Secondly, the bill establishes an expanded point schedule to cover offenses not included in the present regulations.
Section one of the bill as originally introduced set forth a schedule of offenses and the points to be assessed for each conviction. Section two provided that the points were to be *327 assessed by the municipal court judges for convictions within the State, while the Director was to assess points for out of State convictions. Moreover, the original bill gave the Director no discretion with respect to suspension once certain defined criteria had been met. Thus, it can be fairly said that the object of the original bill was to repose in the Legislature authority that had previously been in the Director, requiring the courts to administer the system, while also circumscribing the discretion of the Director as to those powers still reposited in that office.
However, the bill was amended on March 8, 1982, prior to its adoption.[4] The amendments removed the statutory point schedule from the original bill. In its place the following language was substituted as section one of the statute:
The Director of the Division of Motor Vehicles shall have the authority, ... to continue to adopt rules and regulations to determine the motor vehicles offenses for which penalty points may be assessed under this act, and the amount of points to be assessed for each offense.
In addition, the bill was amended to restore discretion in the Director with respect to the suspension of driving privileges.
The relevant portion of the Senate statement accompanying these amendments read as follows:
The purpose of these amendments is to remove the schedule containing the motor vehicle offenses for which points can be assessed and the number of points assessed for each offense, and to replace it with a provision authorizing the Director of the Division of Motor Vehicles to establish such a schedule of offenses and points by regulation, extending the system which has been in effect for many years and thereby recognizing the validity of the point system now in effect. [emphasis added.]
Despite the amendments and the reason stated for them, the language "[t]he court shall assess points ...[,]" found in section two of the bill, which is now incorporated in N.J.S.A. 39:5-30.6, was left intact when the bill was enacted. The legislative history does not specifically reveal if this was done intentionally, or if the language was merely overlooked at the time the amendments were made. However, the Senate statement explaining its final action *328 and the reason for the amendments evidences an intent to recognize the "validity" of the point system currently in effect, thereby restoring authority and discretion in the D.M.V. which the original bill had attempted to take away.
That being the case, it appears to us that the Legislature also intended to leave the assessment of points to the D.M.V. since that was the manner in which the point system was administered at the time. Further evidence of this intent was the amended statute's validation of the D.M.V.'s prior actions by adopting into law regulations promulgated in 1977 by the D.M.V. as a response to the Commission's recommendations, but not incorporated in the 1977 statutory amendments. (Compare N.J.A.C. 13:19-10.3, -10.4, and -10.6 with L. 1982, c. 43, § 3, 4 and 6, and see fn. 3 supra.)
Common sense also dictates that the Legislature did not intend to adopt a judicially implemented point system. Of some significance in that regard is the fact that, subsequent to the 1982 amendments, the Legislature has not interfered with the D.M.V.'s conduct in assessing points. Such inaction is an implied recognition that D.M.V.'s administrative conduct is in accord with legislative intent. See Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 300, 240 A.2d 8 (1968) (stating that "the ten year acquiescence of the Legislature with regard to changing N.J.S.A. 18:8-17(3) will be construed as legislative acceptance of the interpretation placed on the enactment by the Department of Education.")
Moreover, plaintiffs have not introduced any evidence of court sponsored policies or procedures subsequent to the 1982 enactment directing municipal courts to assess points. In fact, although not a direct indication of legislative intent, municipal court judges have never been instructed to assess points in open court. The checklist of opening remarks for municipal judges, dated October 9, 1990, and approved by the Supreme Court, instructs municipal court judges to advise defendants that "the record of the plea for all traffic violations, except parking, is sent to the *329 Division of Motor Vehicles where points may be assessed and increased insurance surcharges levied." (emphasis added.)[5]
We now return to the actual wording of the statute as finally adopted in 1982 which uses the word "shall" in section two of the statute, and later codified as N.J.S.A. 39:5-30.6. In general, the word "shall" is construed to be mandatory and the word "may" permissive or directory. Franklin Estates v. Tp. of Edison, 142 N.J. Super. 179, 361 A.2d 53 (App.Div. 1976), aff'd, 73 N.J. 462, 375 A.2d 658 (1977). Nevertheless, the terms have been held to be interchangeable when necessary to implement legislative intent. Id. at 184, 361 A.2d 53. Use of the word "shall" has not been found to be conclusive, but rather is indicative of a presumption that can be overcome through interpretation of the legislation's purpose. Id. See also Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 153 A.2d 10 (1959); In re Munson-Lied Co., 68 N.J. Super. 281, 287, 172 A.2d 222 (App.Div. 1961).
The significant consideration is whether the provision in question relates to the essence of the law or merely to the form and manner in which it is to be carried out. If no public benefit ensues and no private right is insured by according the word "shall" an imperative meaning, it is to be construed as directory rather than mandatory. (Citations omitted).
[Franklin Estates v. Tp. of Edison, supra, 142 N.J. Super. at 184, 361 A.2d 53.]
For example, in State v. Nicastro, 218 N.J. Super. 231, 527 A.2d 492 (Law Div. 1986), the defendant, who had been convicted of driving under the influence of alcohol, moved to suppress the results of a breathalyzer test. He claimed that his statutory rights afforded by N.J.S.A. 39:4-50.2 had been violated because his attempts to obtain an independent test were thwarted by the police. The pertinent part of the statute on which defendant relied reads:
c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken *330 and chemical tests of his breath, urine, or blood made by a person or physician of his own selection. (Emphasis added).
In interpreting the statute, the Nicastro court determined that
subsection (a) and subsection (c) of N.J.S.A. 39:4-50.2 must be read in pari materia in that the use of the word "shall" requires both that the driver submit to the breathalyzer tests, and that the State reciprocate by affording the opportunity to obtain an independent analysis of breath, blood or urine. Nicastro, supra, 218 N.J. Super. at 236, 527 A.2d 492.
Because the police did not have reasonable procedures in place to permit defendant to exercise his statutory right to refute evidence against him obtained by the State, the court held that the evidence obtained by the police must be suppressed. Id. at 237, 527 A.2d 492.
The court in Nicastro, however, made a point to distinguish the issue before it, where defendant was prejudiced by failure of the State to adhere to the statutory mandate, from the issue presented in State v. Hudes, 128 N.J. Super. 589, 321 A.2d 275 (Cty.Ct. 1974). In Hudes, defendant appealed his conviction of operating a vehicle under the influence of alcohol, claiming that, among other things, his constitutional rights were violated when the police recorded the results of a breathalyzer test on forms that were not sequentially numbered. N.J.S.A. 39:4-50.3 provides that such reports "shall be sequentially numbered." Nonetheless, the court in Hudes denied defendant's attempt to suppress the results of the breathalyzer test, because there was no indication that the procedures used by the police prejudiced defendant's substantive rights. Id. at 604, 321 A.2d 275.
Although plaintiffs here rely on State v. Nicastro, the situation in the present case is more analogous to that in State v. Hudes. Plaintiffs contend that the use of the word "shall" in the statute confers a right on the violator; "the right to be sentenced in open court, the right to make remarks before being sentenced, the right of his counsel to suggest the proper sentence and the right to know the final disposition of his case when he leaves the *331 courtroom." However, except in the unusual case,[6] the law has left the court no discretion to determine the number of points to be assessed for a particular violation. N.J.A.C. 13:19-10.1 sets out the number of points to be assessed for each violation. Regardless of whether the points are assessed in open court or by the D.M.V., the assessed number of points will be the same. Therefore, in the instant matter, as in Hudes, no substantive statutory rights are being prejudiced when points are assessed by the D.M.V. rather than by a judge. The use of the word "shall" in the section of the statute under review thus does not relate to the "essence of the law [but] merely to the form and manner in which it is carried out." Franklin Estates v. Tp. of Edison, supra, 142 N.J. Super. at 184, 361 A.2d 53.
Finally, we conclude that plaintiffs reliance on State v. Duthie, 200 N.J. Super. 19, 490 A.2d 323 (App.Div.), certif. denied, 101 N.J. 277, 501 A.2d 942 (1985), as evidence that the assessment of points is reserved to the municipal courts, is misplaced. The issue in Duthie was whether a complaint could be amended in municipal court. The Law Division permitted the amendment, resulting in the defendant being charged with improper passing (N.J.S.A. 39:4-85), rather than driving on the wrong side of the road (N.J.S.A. 39:4-88). The effect of the amendment was that defendant would be charged with four points on his license, rather than two. Although this court allowed the amendment, it reduced the points assessed against the defendant from four to two. In doing so we indicated that a four point assessment would be precluded by both State v. Koch, 161 N.J. Super. 63, 390 A.2d 1192 (App.Div. 1978), which prohibits an amendment if it results in the substitution of a more serious offense than that originally charged on grounds of fundamental fairness, as well as by State v. DeBonis, 58 N.J. 182, 276 A.2d 137 (1971), which holds, for the same reason, that a defendant appealing from a municipal court conviction cannot risk a greater sentence in Superior Court. Duthie, supra, *332 200 N.J. Super. at 24-25, 490 A.2d 323. The opinion did not mention N.J.S.A. 39:5-30.6 in coming to its conclusion, and thus did not decide whether the court was the only entity with the power to assess points.

II.
Finally, plaintiffs contend that the assessment of points by the D.M.V. constitutes a second punishment for the same offense, and therefore violates Fifth Amendment double jeopardy clause protections. The double jeopardy clause affords three separate protections: (1) protection against second prosecution for the same offense after acquittal, (2) protection against second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65 (1969). Those same protections are guaranteed by the New Jersey Constitution. State v. Bowen, 224 N.J. Super. 263, 273 fn. 2, 540 A.2d 218 (App.Div.), certif. denied, 113 N.J. 323, 550 A.2d 442 (1988). Motor vehicle prosecutions have been regarded as quasi-criminal in nature, despite the fact that a traffic offense is neither a crime nor a misdemeanor. Vickey v. Nessler, 230 N.J. Super. 141, 149, 553 A.2d 34 (App.Div.), certif. denied, 117 N.J. 74, 563 A.2d 836 (1989). They are regarded in this manner in order to satisfy the requirements of fundamental fairness and essential justice to the accused. Ibid. Consistent with those concepts, our Supreme Court has held that double jeopardy principles are applicable to motor vehicle offenses. State v. Dively, 92 N.J. 573, 586, 458 A.2d 502 (1983).
Nevertheless, plaintiffs' contention is without merit. Plaintiffs argue that the assessment of points by D.M.V. after the municipal court conviction violates the protection against multiple punishment for the same offense. Plaintiffs appear to rely on the fact that the statute heading of N.J.S.A. 39:5-30.6 reads "Penalty point; assessment; record." Simply because the statute is entitled "Penalty point" is not in itself determinative of whether the *333 points are intended as punishment. Such headings are provided by those who codify and compile our statutes, not by the Legislature. State v. DiSomma, 262 N.J. Super. 375, 380-82, 621 A.2d 55 (App.Div. 1993). It must first be determined if the reason for assessing points is punitive, in order to determine whether the double jeopardy clause has been violated. See United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); In re Garay, 89 N.J. 104, 111, 444 A.2d 1107 (1982).
Plaintiffs' argument that points are penalties do not make them so. As pointed out in Part I of this opinion, the historical evidence is to the contrary. The Commission's report is clear evidence that the purpose of the point system is remedial and rehabilitative. Further, the Commission's recommendations relative to the remedial aspect of the point system were subsequently adopted by the D.M.V. through regulations. As noted earlier, in response to the Commission report, D.M.V. regulations provided for an advisory notice to a person who accumulated six points, and provided for an annual point reduction credit. N.J.A.C. 13:19-10.4. In addition, a person is permitted to attend a Driver Improvement School in lieu of all or part of any suspension. N.J.A.C. 13:19-10.2. It is only when the driver fails to comply with all the requirements of the school, or receives subsequent violations, that driving privileges are suspended. N.J.A.C. 13:19-10.3 and 10.6. The Legislature sanctioned the D.M.V.'s remedial approach in the 1982 amendments. (See for example L. 1982 c. 43 § 3, 4, 6.) Thus, we reject plaintiffs' argument that the point system offends the double jeopardy clause.
Plaintiffs' complaint is dismissed with prejudice.
NOTES
[1] Defendants do not challenge the standing of plaintiff corporation, nor did plaintiffs move to have the matter maintained as a class action. See R. 4:32-1 et seq. However, plaintiffs' brief implies that the nine individual plaintiffs have had points assessed to their drivers' records by the D.M.V. Thus, standing as to those plaintiffs is clear.
[2] Plaintiffs' appellate brief states that they "willingly accept and adopt factual affidavits filed on behalf of the Division of Motor Vehicles."
[3] Despite the sponsor's statement indicating that the 1977 amendments were designed to incorporate the administrative changes in the point system, only N.J.A.C. 13:19-10.2 was reflected in the 1977 amendments. N.J.A.C. 13:19-10.3, 13:19-10.4, 13:10.5 and 13:10.6 were not statutorily enacted until the 1982 amendments, which contain the provision that is the subject of this appeal.
[4] The bill had been previously amended on February 8, 1982; however, that amendment is not pertinent to this matter.
[5] This information was supplied in the affidavit of Ira Scheff, Chief, Court Operations, Municipal Court Services, Division of the Administrative Office of the Courts. See fn. 2 supra.
[6] State v. Duthie, 200 N.J. Super. 19, 490 A.2d 323 (App.Div.) certif. denied, 101 N.J. 277, 501 A.2d 942 (1985), discussed infra examines such a situation.